# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| GINGER HEADLEY, *individually and on behalf of Corey Coffelt, deceased*, et al., | ) ) ) ) |  |
| Plaintiffs, | ) ) | No. 2:23-CV-52 HEA |
| v. | ) ) |  |
| CETURION OF MISSOURI LLC, et al., | ) ) |  |
| Defendants. | ) |  |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on three motions to dismiss. Defendants Centurion of Missouri, LLC ("Centurion"), Janet Eddy, and Katlyn C. Huff move to dismiss Plaintiffs' Third Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 79). Defendants Boshko Ognenovski, Brackstin Gabriel Carr, and Rusty Ratliff filed a Motion to Dismiss Counts II, V, and VI pursuant to Rule 12(b)(6), and Defendant Carla L. Heckenmueller filed a separate Motion to Dismiss Counts II and V pursuant to Rule 12(b)(6). (ECF Nos. 91 and 98). Defendants Amanda Lake, Tommie Luntsford, and Valerie Helm joined these two motions. (ECF Nos. 103, 105 and 111). Plaintiffs oppose all three motions to dismiss. Therefore, the motions are ripe for review. For the reasons set forth below, Defendants Centurion, Eddy, and Huff's Motion to

Dismiss is denied; Defendants Ognenovski, Carr, and Ratliff's Motion to Dismiss, which Defendants Lake, Luntsford, and Helm join, is granted in part and denied in part; and Defendant Heckenmueller's Motion to Dismiss, which Defendants Lake, Luntsford, and Helm join, is denied.

## I.  Procedural Background

This case arises from the death of Corey Coffelt, who died from suicide by hanging on February 6, 2022, while in the custody of the Missouri Department of Corrections ("MDOC") at Moberly Correctional Center ("MCC"). Plaintiffs Ginger and Mark Coffelt are Corey Coffelt's parents.  Plaintiffs allege that prior to his death, their son had three prior attempts of suicide by hanging, all of which were included in his medical records and of which the defendants all had knowledge.  Plaintiffs also allege that prior to his death Cory Coffelt was suffering from severe mental and visual hallucinations, depression, anxiety, and psychosis, but he was denied medical treatment.  Plaintiffs allege, among other things, that the defendants in this case failed to provide their son with adequate medical care, and that they failed to keep him safe.

Plaintiffs originally filed suit on August 11, 2023, in Missouri state court. Defendants removed the matter to federal court on September 13, 2023, on the basis of federal question subject matter jurisdiction, pursuant to 28 U.S.C. § 1331. Following removal, Plaintiffs filed the Third Amended Complaint ("Complaint"),

2

which is the operative complaint in this suit.  In their Complaint, Plaintiffs bring

claims against nine individual defendants – Defendants Lake, Ratliff, Eddy, Huff,

Ognenovski, Helm, Heckenmueller, Carr, and Luntsford – all of whom are sued in

their individual capacities.  Plaintiffs also bring claims against Centurion.

In their Complaint, Plaintiffs bring the following civil rights claims under 42

U.S.C. § 1983: Denial of Medical Care/Deliberate Indifference to Medical Need,

against Defendants Eddy and Huff (Count III); Unconstitutional Policy or Custom

against Defendant Centurion (Count IV); Failure to Protect/Denial of Medical Care

against Defendants Ognenovski, Helm, Heckenmueller, Carr, and Luntsford (Count

V); and Failure to Train/Supervise against Defendants Lake, Ratliff, Ognenovski,

and Helm (Count VI).  Plaintiffs also bring the following claims under Missouri law:

Wrongful Death – Medical Negligence against Defendants Centurion, Eddy, and

Huff (Count I); and Wrongful Death – Negligence, against Defendants Ognenovski,

Helm, Heckenmueller, Carr, and Luntsford (Count II).  Defendants move to dismiss

all counts in the Complaint for failure to state a claim.

## II.    *Legal Standard*

To survive a motion to dismiss for failure to state a claim, "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "where

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016) (quotation omitted).  The facts alleged must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," *Twombly*, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555–56; Fed. R. Civ. P. 8 (a)(2).  The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however. *Iqbal*, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. *Id.*

### III. Facts Alleged in Complaint

Plaintiffs allege that Corey Coffelt was an inmate at MCC in November 2021. Corey Coffelt had three prior attempts at suicide by hanging. These attempts were included in Corey Coffelt's medical records that were in the defendants' possession, and all the defendants knew of his past suicide attempts by hanging.

On November 11, 2021, Corey Coffelt sent a health request asking for medication and mental health services. On November 19, 2021, he was seen by Defendant Eddy, a licensed professional counselor. Corey Coffelt told Defendant Eddy that he was experiencing paranoia, audio/visual hallucinations, and anxiety, and more specifically, that he was "seeing the 'grim reaper,' attachment [sic] by an evil paranormal entity, seeing a 'torn angel' moving towards evil, hearing trash bags moved or banging doors and believe[ed] that other inmates were being killed." (ECF No. 75 at 8). He also reported lack of sleep due to hypervigilance. At his appointment, Corey Coffelt requested medication. In the medical reports, his condition was listed as "stable," and he was not provided medication or placed on suicide watch. (*Id.*)

On December 6, 2021, Corey Coffelt was again seen by Defendant Eddy for a follow up appointment based on his request for medical assistance regarding experiences of psychosis, paranoia, severe anxiety, and depression. Corey Coffelt reported hearing "chain saws all around him, seeing the 'grim reaper,' and [that he]

believe[ed] that the water and food were poisoned." (*Id.*)  Corey Coffelt reported lack of sleep due to hypervigilance and requested medication. He was not provided medication or placed on suicide watch.

The Complaint alleges that on December 10, 2021, Corey Coffelt reported that he was suffering from psychosis, severe depression, and anxiety, and that he continued to see "scary things" following him.  It is not clear from the Complaint to whom this report was made.  (*Id.*)  According to the Complaint, "the MDOC Mental Health Treatment Team" determined that Corey Coffelt would be referred to a psychiatrist.

On December 16, 2021, Corey Coffelt was seen by MDOC Psychiatrist Kavita P. Pendurthi for experiencing audio/visual hallucinations, paranoia, and lack of sleep. He was diagnosed with substance induced mood disorder with psychosis and was prescribed Zyprexa (antipsychotic medication) and Vistaril (antianxiety medication).

According to the Complaint, Corey Coffelt was not provided his medications during medication administration on the following dates:  December 21, and 25, 2021, January 3, 5, 7, 10, 11, 25 and February 4, 2022.

On February 4, 2022, Corey Coffelt was seen by Defendant Huff for a segregation initial evaluation.  According to the Complaint, the medical records from that date indicate he was "suffering from existing medical/mental health conditions,

6

taking dose-by-dose psychotropic medications, and quiet." (ECF No. 75 at 9). Segregated confinement was ordered on the basis of there being "an immediate security risk involved." (*Id.*) Further, it was noted that "[t]here is urgent need to separate the offender from others for his/her own safety or that of others" and "for the security and good order of the institution." (*Id.* at 9-10). The Complaint alleges that Corey Coffelt was not placed on suicide watch, not timely referred to appropriate medical treatment, and that his previous suicide attempts and obvious symptoms were ignored.

According to the Complaint, on February 6, 2022, Defendants Ognenovski, Helm, Heckenmueller, Carr, and Luntsford left Corey Coffelt unattended with a bedsheet and holsters with which he could hang himself. On February 6, 2022, shortly after 12:00 p.m., Corey Coffelt was found hanging in his administrative segregation cell with a bedsheet tied around his neck. Corey Coffelt was pronounced dead by MDOC medical providers at MCC due to strangulation via hanging.

According to the Complaint, MCC policy mandated that Corey Coffelt be checked every 20 minutes in the administrative segregation housing unit. Defendants Ognenovski, Helm, Heckenmueller, Carr, and Luntsford were on duty and were responsible for checking on Corey Coffelt per MCC policy. Plaintiffs allege that Defendants Ognenovski, Helm, Heckenmueller, Carr, and Luntsford did

not check on Corey Coffelt for an hour prior to his death, which was in violation of MCC policy.

The Complaint alleges that "numerous deaths including suicides" have occurred at MCC since 2010, at least one of which was by hanging. (*Id.* at 10). While he was incarcerated between November 2, 2021, and February 6, 2022, Corey Coffelt submitted "numerous and continuous" medical complaints to staff at MCC concerning depression, anxiety, psychosis, audio/visual hallucination, and lack of sleep. Plaintiffs alleges "Defendants were aware that [Corey Coffelt] had an objectively serious mental health need, as it was obvious based on his condition and [his] prior records regarding his condition, yet Defendants failed to provide adequate and timely medical treatment, failed to properly monitor Decedent while he was in administrative segregation and failed to ensure Decedent's safety, which ultimately led to his untimely death." (*Id.* at 11).

## *IV.  Discussion*

In their three motions, the various defendants in this case have moved to dismiss all six counts in the Complaint. The Court will first address Plaintiffs' federal constitutional claims brought pursuant to 42 U.S.C. § 1983 (Count III-VI), and then turn to Plaintiffs' state law claims (Count I-II).

## A.   Constitutional Claims under § 1983

Section 1983 "does not confer substantive rights" but rather it the mechanism "to vindicate rights conferred by the Constitution or laws of the United States." *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000).  To state a claim under § 1983, Plaintiffs must set forth two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1.  *Count III – Denial of Medical Care/Deliberate Indifference to Medical Need.*

In Count III, Plaintiffs allege that Defendants Eddy and Huff failed to provide their son with medical care in violation of the Eighth Amendment.  Deliberate indifference to the serious medical needs of an inmate constitutes an "unnecessary and wanton infliction of pain" that is prohibited by the Constitution.  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  It is a violation of the Eighth Amendment to intentionally deny medical care for serious medical needs. *Id.* at 103.

To state an Eighth Amendment violation related to medical care, a plaintiff must plead facts that show that the defendant acted with deliberate indifference. *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). To do so, a plaintiff must show that he suffered from an objectively serious medical need, and that the defendant knew of, and yet deliberately disregarded, that need. *Schaub*, 638 F.3d at

9

914. Deliberate disregard is a mental state "equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposely causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Id.* at 914–15 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835, 839–40 (1994)). Allegations "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Id.; Est. of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). A prison official exhibits deliberate indifference when the official actually "knows of and disregards" a prisoner's serious medical needs. *Farmer*, 511 U.S. at 837; *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995).

"[A] risk of suicide by an inmate is a serious medical need." *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012) (citing *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000). An inmate has "a clearly established constitutional right to be protected from the known risks of suicide and to have his serious medical needs attended to." *Id.* (citing *Yellow Horse v. Pennington Cnty.*, 225 F.3d 923, 927 (8th Cir. 2000).

In moving for dismissal, Defendants Eddy and Huff do not argue that Plaintiffs fail to allege Corey Coffelt had a serious medical need or that they knew of the serious medical need, but rather, Defendants Eddy and Huff contend that Plaintiffs fail to state a claim in Count III, because the allegations in the Complaint

fail to connect either Defendant Eddy or Defendant Huff to specific dates of treatment when the alleged denials of medication or medical care took place.

Turning to Plaintiffs' allegations as to Defendant Eddy, Plaintiffs allege she is a counselor, and that she saw Corey Coffelt on November 19, 2021, at which time he reported that he was experiencing hallucinations, psychosis, paranoia, severe anxiety, and depression. Plaintiffs further allege that Defendant Eddy knew Corey Coffelt had prior suicide attempts, and despite this, he was not provided medication or placed on suicide watch. It is also alleged that Defendant Eddy saw Corey Coffelt on December 6, 2021, at which time he expressed that he was experiencing the same symptoms, and again Defendant Eddy did not escalate medical care. Corey Coffelt was not referred to a psychiatrist until December 10, and he was not seen by one until December 16, 2021.

The Court finds Plaintiffs have sufficiently alleged that Defendant Eddy was aware of Corey Coffelt's serious medical need, and that she unlawfully delayed medical treatment. *Jackson v. Riebold*, 815 F.3d 1114, 1120 (8th Cir. 2016) (delay in treatment can rise to the level of an Eighth Amendment violation, but plaintiff must prove with evidence "that the delay in his treatment had a detrimental effect"). At this stage in the proceedings, the Court finds Plaintiffs have stated a claim as to Defendant Eddy in Count III.

As for Defendant Huff, Plaintiffs allege that Corey Coffelt was seen by Defendant Huff, who is a nurse, on February 4, 2022, and despite the fact that Corey Coffelt was on psychotropic medications and had a known history of suicide attempts, plus that "[t]here [was an] urgent need to separate the offender from others for his/her own safety or that of others," Defendant Huff did not place Corey Coffelt on suicide watch or refer him to appropriate medical treatment. The Court finds Plaintiffs have sufficiently alleged a claim for deliberate indifference to a medical need against defendant Huff, in that there are allegations that she failed to take steps to protect Corey Coffelt from known risks of suicide. *Luckert*, 684 F.3d at 817. Defendants Eddy and Huff's motion to dismiss Count III will be denied.

### 2.    *Count V – Failure to Protect/Denial of Medical Care*

In Count V, Plaintiffs allege Defendants Ognenovski, Helm, Heckenmueller, Carr, and Luntsford failed to protect their son and denied him medical care in violation of the Eighth Amendment. As stated above, "[T]he Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs, including the risk of suicide." *Smith-Dandridge v. Geanolous*, 97 F.4th 569, 575 (8th Cir. 2024) (cleaned up).

These five Defendants argue that Plaintiffs allege insufficient facts to show that they had the requisite knowledge that Corey Coffelt was likely to end his life. The Court does not agree. There are two components to a deliberate indifference

claim: "[An objective component, which requires a plaintiff to demonstrate an objectively serious medical need," and "a subjective component, which requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." *Id.* There must be a "strong likelihood" that the inmate would harm himself, the defendant knew this and "failed to respond reasonably." *Lambert v. City of Dumas*, 187 F.3d 931, 937 (8th Cir. 1999). *See also Gregoire*, 236 F.3d at 418. That said, a plaintiff "need not necessarily show that the actor actually knew of the substantial risk of harm to an inmate; the district court can infer knowledge if the risk was obvious." *Smith-Dandridge*, 97 F.4th at 576 (citing *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015). But it is not enough to show "that a reasonable person would have known about the risk, or that the officer should have known." *Id.* (quotations and citations omitted). "[I]f defendants were 'exposed to information concerning the risk and thus must have known' about it, a finding of deliberate indifference may be warranted." *Id.* (quoting *Farmer*, 511 U.S. at 842).

The Complaint alleges that these five Defendants knew Corey Coffelt's medical history and that he had attempted suicide by hanging three times. Further, Corey Coffelt was placed in segregation because there was a risk that he would harm himself and/or others. The Court finds the Complaint contains sufficient facts, which if taken as true, one could reasonably infer that these Defendants knew, or it was obvious that there was strong likelihood that the Corey Coffelt would harm himself

13

on February 6, 2022.  *Smith-Dandridge*, 97 F.4th at 576.  *But cf. Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 860 (8th Cir. 2018) (affirming dismissal of claim because the complaint contained only legal conclusion that defendant was deliberately indifferent and did not contain factual allegations that information regarding inmate's mental condition was relayed to defendant).

Defendants Ognenovski, Carr, Luntsford, and Helm also argue that Plaintiffs fail to state a claim against them in Count V because Plaintiffs allege Defendants violated a MCC policy requiring cell-checks every 20 minutes, and a violation of a policy is not a violation of the Constitution.  The Court concurs that "[f]ailure to follow written procedures does not constitute *per se* deliberate indifference." *Luckert*, 684 F.3d at 819. "The relevant inquiry is whether the official's acts violated [the inmate]'s constitutional rights." *Francisco v. Corizon* Health, Inc., 108 F.4th 1072, 1078 (8th Cir. 2024).   Here, Plaintiffs allege more than a violation of a MCC policy. They allege these Defendants left Corey Coffelt, who they knew had three prior suicide attempts by hanging and was segregated because he presented a harm to himself and/or others, alone and unattended in a cell with a bedsheet and holsters from which he could hang himself and that they later failed to check on him for an hour.  These allegations are sufficient to state a claim.

Finally, Defendants Ognenovski, Helm, Heckenmueller, Carr, and Luntsford argue that they are entitled to qualified immunity with regard to the claims in Count

V.  The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be clearly established, the contours of the right must be sufficiently clear that a reasonable official would have understood that what he was doing violates that right.  *Quraishi v. St. Charles Cnty., Missouri*, 986 F.3d 831, 835 (8th Cir. 2021) (citation omitted). The state of the law at the time of the alleged violation must give officials "fair warning" that their conduct was unlawful. *Id.* There may also be the rare obvious case where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances. *Id.*

Inmates have "a constitutional right to be protected from the known risks of suicide and to have [their] serious medical needs attended to," *Yellow Horse*, 225 F.3d at 927. *See also Luckert*, 684 F.3d at 817; *Gregoire*, 236 F.3d at 417. Defendants argue that they are entitled to qualified immunity from this suit because their accused inaction does not amount to deliberate indifference under controlling case law.  As discussed above, the Court does not agree.

Plaintiffs have alleged these five Defendants engaged in conduct that violated Corey Coffelt's rights under the Eighth Amendment.  *See* discussion *supra*. Further,

these rights were clearly established at the time, as the Eighth Circuit has held that leaving an inmate, who is a known suicide risk, alone in a cell with a bedsheet and the means to hang himself is deliberate indifference. *Turney v. Waterbury*, 375 F.3d 756, 761 (8th Cir. 2004); *Coleman v. Parkman*, 349 F.3d 534, 540 (8th Cir. 2003). Defendants Ognenovski, Helm, Heckenmueller, Carr, and Luntsford's motion to dismiss on the basis of qualified immunity is denied.  Plaintiffs have stated claims against these five Defendants in Count V.

### 3.  Count VI – Failure to Train or Supervise

In Count VI, Plaintiffs allege Defendants Lake, Ratliff, Ognenovski, and Helm violated Corey Coffelt's constitutional rights in that they failed to properly train and supervise staff on how often to check on inmates, how to keep inmates safe, and how to prevent suicide.  Plaintiffs further allege that Defendant Ognenovski and Helms were on duty on the date of Corey Coffelt's death, and they were responsible for training officers under their command and enforcing policies.

A supervising official may be held liable under § 1983 when his or her "failure to properly supervise and train the offending employee[s] caused a deprivation of constitutional rights." *Perkins v. Hastings*, 915 F.3d 512, 524 (8th Cir. 2019) (citation omitted). In order to recover for a failure to train or supervise, a plaintiff must establish four elements: (1) the supervisor was on "notice of a pattern of unconstitutional acts committed by subordinates;" (2) the supervisor "was

16

deliberately indifferent to or tacitly authorized" the pattern of unconstitutional acts; (3) the supervisor failed to take "sufficient remedial action" to address the pattern of unconstitutional acts; and (4) the supervisor's failure to remedy the pattern of unconstitutional acts proximately caused the plaintiff's injury. *Id.*

In their Complaint, Plaintiffs allege Defendants Lake, Ratliff, Ognenovski, and Helm were responsible for training and supervising staff, and that the four supervisory defendants were on notice that their staff regularly failed to conduct cell checks every 20 minutes in accordance with MCC policy.  Plaintiffs also allege that the four supervisory defendants had notice that other inmates had committed suicide. These allegations are insufficient to state a claim of failure to train or supervise under § 1983, because Plaintiffs have not alleged that the four supervisory defendants were on notice that there was a pattern of unconstitutional acts committed by their subordinates.

As addressed above, a violation of a written policy is not a *per se* constitutional violation. *Francisco*, 108 F.4th at 1078; *Luckert*, 684 F.3d at 819. Further, the fact that there have been an unspecified number of suicides at MCC since 2010, despite the prison's policies requiring cell checks, does not establish that there is pattern of unconstitutional acts.  Setting aside that there are no allegations as to the exact number of suicides or when they occurred, there are no factual allegations whatsoever as to the circumstances under which the suicides occurred.

17

Even accepting Plaintiffs' factual allegations as true, one cannot infer that there was a pattern of unconstitutional conduct based on allegations that the cell check policy was not always followed, and that there has been more than one suicide at MCC since 2010.  Plaintiffs have not sufficiently pleaded the elements to state a claim of failure to train or for failure to supervise. *Perkins*, 915 F.3d at 524.  Defendants Lake, Ratliff, Ognenovski, and Helm's motion to dismiss Count VI is granted.

### 4. Count IV – Unconstitutional Policy or Custom

In Count IV, Plaintiffs bring a claim against Centurion for its unconstitutional customs or policies.   In moving to dismiss, Centurion argues Plaintiffs fail to plead facts identifying an official policy or a widespread custom or practice that caused a violation of Corey Coffelt's constitutional rights.

A corporation, such as Certurion, acting under color of state law only can be held liable under § 1983 for its own unconstitutional policies. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). In the context of § 1983, the term "policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by [an] official who has final authority regarding such matters." *Corwin v. City of Indep., MO.*, 829 F.3d 695, 700 (8th Cir. 2016).  Alternatively, a plaintiff can hold an entity liable based on an unconstitutional "custom."  The Supreme Court has explained, "an act performed pursuant to a 'custom' that has not been formally

approved by an appropriate decisionmaker may fairly subject [an entity] to liability on the theory that the relevant practice is so widespread as to have the force of law." *Board of Cnty. Comm'rs of Bryan Co., Okla. v. Brown*, 520 U.S. 397, 404 (1997). "Governmental liability may be established through proof that the alleged misconduct was so pervasive among the non policy making employees of the [entity] as to constitute a 'custom or usage' with the force of law." *McGautha v. Jackson Cnty., Mo., Collections Dep't*, 36 F.3d 53, 56 (8th Cir. 1994) (internal quotation marks and citation omitted).

To survive a motion to dismiss directed at a claim based on an alleged policy, a plaintiff need not specifically plead or identify an unconstitutional policy. *Crumpley-Patterson*, 388 F.3d at 591. A plaintiff, however, must allege facts that would support the existence of an unconstitutional policy. *Id.* A plaintiff's failure to include factual allegations from which one could begin to draw an inference that the conduct complained of resulted from an unconstitutional policy renders the complaint deficient. *Id.* (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)).

In order to plead liability based on custom, a plaintiff must allege facts showing the following: (1) a continuing, widespread, persistent pattern of unconstitutional misconduct; (2) deliberate indifference to or tacit authorization of such conduct after notice to the officials of that misconduct; and (3) that the custom

was the moving force behind the constitutional violation. *Crumpley-Patterson*, 388 F.3d at 590–91; *Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998); *see also Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

In their Complaint, Plaintiffs fail to allege facts from which one could infer that there is a widespread, persistent pattern of unconstitutional misconduct to which decisionmakers have turned a blind eye or have tacitly approved. *Watkins v. City of St. Louis, Missouri*, 102 F.4th 947, 954 (8th Cir. 2024). Therefore, the Court finds Plaintiffs fail to allege a claim against Centurion based on custom. However, Plaintiffs have alleged that Centurion has written policies that, among other things: deny or delay medical treatment for serious mental health conditions; that allow untrained counselors without prescribing authority to treat inmate with psychiatric conditions; and that fail to identify and place inmates at risk of self-harm on suicide watch. Accepting these allegations as true, as the Court must do at this stage of the proceedings, the Court finds the allegations in the Complaint are sufficient to state an Eighth Amendment claim against Centurion based on its written policies. The Complaint alleges there are written policies that are to blame for the constitutional violations that caused Corey Coffelt's death. The Court denies Centurion's motion to dismiss Count IV.

## B. Plaintiffs' State Law Claims

### 1. Count I – Wrongful Death – Medical Negligence

In Count I, Plaintiffs bring Missouri state law claims against Defendants Centurion, Eddy and Huff for wrongful death based medical negligence. A plaintiff bringing a wrongful death claim based upon medical malpractice must show: (1) the defendant's act or omission failed to meet the required medical standard of care; (2) the defendant's act or omission was negligently performed; and (3) the defendant's act or omission caused the decedent's death. *See, e.g., Sundermeyer v. SSM Reg'l Health Servs.*, 271 S.W.3d 552, 554 (Mo. 2008).

To pursue a claim for wrongful death against a health care provider based on medical malpractice, including wrongful death, Missouri law requires a plaintiff to file an affidavit attesting that he or she has obtained the written opinion of a "legally qualified health care provider" who has opined that  "the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition." Mo. Rev. Stat. § 538.225.  A "legally qualified health care provider" is defined under the statute to be "a health care provider licensed ... in the same profession as the defendant and either actively practicing or within five years of retirement from actively practicing substantially the same specialty as defendant." Mo. Rev. Stat. § 538.225.2.  The Missouri Supreme Court has stated that the purpose of the statute is "to dismiss medical negligence lawsuits that lack even color of merit

at an early stage of litigation," thereby protecting medical professionals from baseless lawsuits and the public from rising costs due to baseless lawsuits. *Spradling v. SSM Health Care St. Louis*, 313 S.W.3d 683, 688 (Mo. 2010) (quotation omitted).

In the case at bar, Plaintiffs filed two affidavits attesting to the fact that they have obtained opinions from Dr. Joel Blackburn, a medical doctor who is board certified in internal medicine, that both Defendants Huff and Eddy "failed to use such care as a reasonable prudent and careful healthcare provider would have under similar circumstances" and that "such failure[s] to use reasonable care directly caused or directly contributed to cause the damages claim in the Complaint, which includes the death of Corey Coffelt on February 6, 2022." (ECF No. 1, Ex. 2 at 1 and Ex. 3 at 1). According to the affidavits, Dr. Blackburn "has more than a decade of experience in treating patients in the jail setting and in correctional medicine;" and he "has experience and knowledge in areas substantially similar to those contained in the Complaint." (*Id.*)

Defendants Huff and Eddy argue that these affidavits do not meet the requirements of Mo. Rev. Stat. § 538.225, because Dr. Blackburn is not a legally qualified health care provider within the meaning of the statute. Defendants point to the fact that Dr. Blackburn is not licensed in the same profession as either Defendant Huff, who is a nurse, or Defendant Eddy, who is a counselor. While the Court acknowledges that the text of the statute states that a legally qualified health

22

care provider must be licensed in the same "profession" as the defendant, viewing the definition of "legally qualified health care provider" within the larger context of the requirements for merit affidavits, the purpose behind the statute, and the use of medical experts in Missouri case law, the Court does not find that the definition is as narrow as Defendants suggest.

As stated above, in order to reduce the number of baseless medical malpractice suits, the Missouri legislature requires that a plaintiff file an affidavit identifying a legally qualified health care provider who will offer the opinion that the defendant "failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances" *and* that such failure to use such reasonable care "directly caused or directly contributed to cause the damages" alleged in the petition.  Mo. Rev. Stat. § 538.225.  In other words, Plaintiffs must demonstrate that they have an expert who will testified not only to the standard of care, but also as to the cause of death – two of three elements of a wrongful death claim.  *Sundermeyer*, 271 S.W.3d at 554.

Generally, under Missouri law, licensed medical doctors testify as medical experts. *Sigrist By & Through Sigrist v. Clarke*, 935 S.W.2d 350, 357 (Mo. Ct. App. 1996).  Medical doctors are allowed to testify as to the standards of care for both nurses and doctors, as well as to causation.  *See, e.g.*, *Huelskamp v. Patients First Health Care, LLC*, 475 S.W.3d 162, 171 (Mo. Ct. App. 2014).  Nurses, on the other

hand, are authorized to testify as to the standard of care for nurses, but "[w]hen an expert's opinion as to cause of death is necessary, that expert *must* be a medical doctor." *Coonce v. Simons*, 520 S.W.3d 821, 825 (Mo. Ct. App. 2017) (citing *Hagen v. Celotex Corp.*, 816 S.W.2d 667, 675 (Mo. 1991) (emphasis added) (finding nurse was competent to testify about the nursing standard of care, but she was *not* qualified to testify as to the cause of death).

Section 538.225 requires a plaintiff to disclose *one* medical expert to opine as to standard of care *and* causation, and because only medical doctors are qualified to testify as to cause of death under Missouri law, the Court finds that Plaintiffs were not required to file an affidavit identifying an expert nurse and an affidavit identifying an expert counselor, as such experts would not be qualified to offer opinions as to causation.  It is the opinion of this Court that the term "profession" in the definition of a "legally qualified health care provider" refers to the medical profession or field in general, not to a specific job or occupation. *See* https://www.merriam-webster.com/dictionary/profession (last visited Mar. 29, 2025) (defining "profession" to mean "(a) a principal calling, vocation, or employment;" or "(b) the whole body of persons engaged in a calling"); *Derousse v. State Farm Mut. Auto. Ins. Co.*, 298 S.W.3d 891, 895 (Mo. 2009) (instructing that a term is not expressly defined in the statute, it is given its plain and ordinary meaning, as typically found in the dictionary).  Defendants Eddy and Huff's

24

argument in support of their motion to dismiss Count I is meritless. Plaintiffs' affidavits identifying Dr. Blackburn meet the requirements of Mo. Rev. Stat. § 538.225.

### 2.  Count II – Wrongful Death - Negligence

In Count II, Plaintiffs bring Missouri state law claims against Defendants Ognenovski, Helm, Heckenmueller, Carr, and Luntsford for wrongful death based on negligence.  In their motion, these Defendants argue that Plaintiffs' wrongful death claims are barred by the one-year statute of limitations set forth in Mo. Rev. Stat. § 516.145.  They also argue that they are entitled to official immunity.

### a. Statute of limitations

Under Missouri law, the statute of limitations for a wrongful death claim is three years after the cause of action accrues. Mo. Rev. Stat. § 537.100. A wrongful death cause of action accrues to the statutory beneficiaries when death occurs. *Dzur v. Gaertner*, 657 S.W.2d 35, 36 (Mo. Ct. App. 1983).  Missouri law also provides that "all actions brought by an offender ... against the department of corrections ... or any employee ... for an act in an official capacity, or by the omission of an official duty" must be brought within one year. Mo. Rev. Stat. § 516.145 (emphasis added). An "offender" is defined as "a person under supervision or an inmate in the custody of the department." Mo. Rev. Stat. § 217.010.

Defendants argue that wrongful death is a personal injury claim that lies only if Corey Coffelt, had he survived, could have maintained a cause of action for damages for the injuries he sustained.  And because Corey Coffelt was an offender, if he had survived and brought a suit himself against Defendants, he would have been subject to the one-year statute of limitations set forth in Mo. Rev. Stat. § 516.145. Therefore, Defendants argue, Plaintiffs are subject to the one-year statute of limitations.  Corey Coffelt did not survive, and Defendants' argument is entirely without merit.

Under the plain language of the statute, § 516.145 applies to suits brought by offenders. Plaintiffs, who are the parents of Corey Coffelt, are not offenders. Mo. Rev. Stat. § 217.010.

Furthermore, Missouri courts have held that an action for wrongful death is an action separate and distinct from the action for injuries to the decedent. *Gramlich v. Travelers Ins. Co.*, 640 S.W.2d 180 (Mo. Ct. App. 1982). The claim does not arise, and the statutory beneficiaries can take no action until after the death occurs.  *Mickels v. Danrad*, 486 S.W.3d 327 (Mo. 2016).  As such, Missouri courts have held that the more specific three-year statute of limitations for wrong death claims applies. See, *e.g. Gramlich*, 640 S.W.2d 180 (statute of limitations applicable to actions for wrongful death is "the only statute of limitations that could be invoked to defeat the claim of plaintiffs in this case.").

26

Based on the plain language of statutes and pursuant to Missouri case law, the Court finds Plaintiffs' wrongful death claims are governed by the three-year wrongful death statute of limitations. Mo. Rev. Stat. § 537.100.  Plaintiffs' claims were timely filed, and Defendant's motion to dismiss Count II on this basis is denied.

### *b.*  Official immunity

Defendants Ognenovski, Helm, Heckenmueller, Carr and Luntsford also move to dismiss Count II on the basis of official immunity. "Official immunity under Missouri state law 'protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts.'" *Hall v. Woodruff*, 121 F.4th 1155, 1157 (8th Cir. 2024) (quoting *State ex rel. Morales v. Alessi*, 679 S.W.3d 467, 471 (Mo. 2023).  Furthermore, as the Eighth Circuit has noted, "the Supreme Court of Missouri has repeatedly cautioned courts 'not to construe [official immunity] too narrowly lest they frustrate the need for relieving public servants of the threat of burdensome litigation.'" *Id.* (quoting *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 495 (Mo. 2024)).

There is a narrow exception to official immunity when "a public official fails to perform a ministerial duty required of the official by law." *State ex rel. Love*, 689 S.W.3d at 495.  A duty is considered ministerial when the "act is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of

legal authority, and without regard to the public official's judgment or opinion concerning the propriety or impropriety of the act to be performed." *State ex rel. Morales*, 679 S.W.3d at 471. When deciding whether the ministerial exception applies, the Missouri Supreme Court instructs that "the central inquiry is not whether the law confers a duty to act but, instead, whether the public official retains any discretion in completing an act." *State ex rel. Love*, 689 S.W.3d at 495 (quotation omitted).  "When even slight discretion exists, the duty is not ministerial." *Id.*

The Complaint alleges that MCC had a policy that required correction officers to check on inmates every 20 minutes; that the policy was mandatory, and staff were required to perform the timed cell checks without discretion; and that on February 6, 2022, Defendants Ognenovski, Helm, Heckenmueller, Carr and Luntsford failed to perform cell checks as mandated by the policy.  More specially, Plaintiffs allege that these five defendants failed to check on Corey Coffelt between the hours of 11:00 p.m. and 12:00 a.m., during which time he hanged himself with a bedsheet.

Timed cell checks have been held to be ministerial where the policy "required performance of checks 'upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to [the guard's] own judgment or opinion concerning the propriety of the act to be performed.'" *A.H. v. St. Louis Cnty., Missouri*, 891 F.3d 721, 729 (8th Cir. 2018) (finding cell checks were ministerial duty, but that defendant was entitled to official immunity because

28

there was evidence that she had performed the checks).    Accepting Plaintiffs' allegations as true that officers had no discretion in doing cell checks, the Court finds Defendants are not entitled to official immunity because the ministerial exception would apply to Defendants' failure to follow the cell-check policy. *A.H.*, 891 F.3d at 729; *State ex rel. Love*, 689 S.W.3d at 495–96. *But cf. Hall*, 121 F.4th at 1158 (finding policy regarding enemies list was not ministerial because the policy does not state when the declarations must be checked or how often, and some discretion is left to guards as to where to place inmates); *McNealy v. City of St. Louis, Missouri*, No. 4:24-CV-00583-JAR, 2024 WL 4817299, at *5 (E.D. Mo. Nov. 18, 2024) (duty to segregate detainees that arose from an order was not ministerial, because how it was to be carried out remained discretionary); *Cady v. City of Malden*, 694 S.W.3d 616, 620 (Mo. Ct. App. 2024) (rejecting plaintiffs' argument that monitoring detainee on video was ministerial act because plaintiffs challenged how the defendant conducted the video surveillance and what he should have known from the videos).  Defendants Ognenovski, Helm, Heckenmueller, Carr, and Luntsford's motion to dismiss Count II is denied.

## *V. Conclusion*

For the reasons stated above, the Court finds Plaintiffs state claims, under 42 U.S.C. § 1983, against Defendants Eddy and Huff in Count III, and against Defendants Ognenovski, Helm, Heckenmueller, Carr and Luntsford in Count V for deliberate indifference under the Eighth Amendment.  Further, based on the allegations in the Complaint, Defendants Ognenovski, Helm, Heckenmueller, Carr and Luntsford are not entitled to qualified immunity as to Count V.  Plaintiffs state a § 1983 claim against Defendant Centurion in Count IV for unconstitutional policies.  However, as to Count VI, Plaintiffs fail to state a § 1983 claim against Defendants Lake, Ratliff, Ognenovski, and Helm, for their failure to train or supervise.  With regard to the state law claims, the Court finds Plaintiffs' wrongful death claims were timely filed, that Plaintiffs' affidavits of merit comply with Mo. Rev. Stat. § 538.225, and that based on the allegations in the Complaint, Defendants Ognenovski, Helm, Heckenmueller, Carr and Luntsford are not entitled to official immunity. Defendants' arguments in support of dismissal of Counts I and II are without merit.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Janet Eddy, Katlyn C. Huff, and Centurion of Missouri, LLC's Motion to Dismiss is **DENIED**.   [ECF No. 79].

**IT IS FURTHER ORDERED** that Defendants Boshko Ognenovski, Brackstin Gabriel Carr, and Rusty Ratliff's Motion to Dismiss, which Defendants Amanda Lake, Tommie Luntsford, and Valerie Helm join, is **GRANTED in part and DENIED in part**.  The Motion is **GRANTED** to the extent that the Court dismisses Plaintiffs' claims of failure to supervise and failure to train under 42 U.S.C. § 1983 in Count VI .  In all other respects, the motion is **DENIED**.  [ECF No. 91]

**IT IS FURTHER ORDERED** that Defendant Carla L. Heckenmueller's Motion to Dismiss, which Defendants Amanda Lake, Tommie Luntsford, and Valerie Helm join, is **DENIED**.  [ECF No. 98]

An appropriate Order of Partial Dismissal will accompany this Opinion, Memorandum and Order.

Dated this 31st day of March, 2025.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE