# United States Court of Appeals
## *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Susan E. Bindler**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

June 10, 2026

Louis Joseph Capozzi III
ATTORNEY GENERAL'S OFFICE
Suite 200
815 Olive Street
Saint Louis, MO  63101

    RE:  25-1877  Ginger Headley, et al v. Boshko Ognenovski, et al

Dear Counsel:

    The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

    Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

        Susan E. Bindler
        Clerk of Court

DNS

Enclosure(s)

cc:    Stephen L. Bishop
      Clerk, U.S. District Court, Eastern District of Missouri
      Olivia Lee Finley
      Joseph Robert Hillebrand
      Stefanie A. Lindquist
      John Michael Patton

     District Court/Agency Case Number(s):  2:23-cv-00052-HEA

# United States Court of Appeals
## *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Susan E. Bindler**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

June 10, 2026

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE:  25-1877  Ginger Headley, et al v. Boshko Ognenovski, et al

Dear Sir or Madam:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellants was Louis Joseph Capozzi, III, AAG, of Saint Louis, MO. The following attorney(s) appeared on the appellant brief was Robert Ryan Harding, former AAG, of Jefferson City, MO.

Counsel who presented argument on behalf of the appellees and appeared on the brief was Stephen L. Bishop, of Kansas City, MO.

The judge who heard the case in the district court was Honorable Henry Edward Autrey.

If you have any questions concerning this case, please call this office.

Susan E. Bindler
Clerk of Court

DNS

Enclosure(s)

cc:  MO Lawyers Weekly

District Court/Agency Case Number(s):  2:23-cv-00052-HEA

# United States Court of Appeals

## For the Eighth Circuit

_____

No. 25-1877

_____

Ginger Headley; Mark Coffelt, individually and on behalf of Corey Coffelt, deceased

*Plaintiffs - Appellees*

v.

Centurion of Missouri, LLC; Amanda Lake, in her individual capacity; Rusty Ratliff; Janet Eddy, RN, in her individual and official capacities; Katlyn Huff, RN, in her individual and official capacities

*Defendant*s

Boshko Ognenovski; Valerie J. Helm; Carla L. Heckenmueller; Brackstin Gabriel Carr; Tommie L. Luntsford

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Hannibal

_____

Submitted: April 15, 2026
Filed: June 10, 2026

_____

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.

_____

BENTON, Circuit Judge.

While in administrative segregation at Missouri's Moberly Correctional Center, Corey Coffelt took his own life by hanging.  His parents, Ginger Headley and Mark Coffelt, asserted state wrongful-death claims and federal claims under 42 U.S.C. § 1983 against, among others, Corrections Officers Boshko Ognenovski, Valerie J. Helm, Carla L. Heckenmueller-Boggs, Brackstin G. Carr, and Tommie L. Luntsford.  These corrections officers moved to dismiss three counts of the complaint as barred by official and qualified immunity.  The district court denied the motions to dismiss as to two claims: the wrongful-death claim and the § 1983 claim of deliberate indifference to the risk of suicide.  The corrections officers appeal.  Having jurisdiction to review denials of official and qualified immunity under the collateral order doctrine, this court reverses and remands.  *See* ***Mitchell v. Forsyth***, 472 U.S. 511, 530 (1985); ***N.S. v. Kansas City Bd. of Police Comm'rs***, 933 F.3d 967, 970 (8th Cir. 2019).

While incarcerated at Moberly Correctional Center (MCC), Corey Coffelt experienced mental health issues.  On November 11, 2021, he began to request medication and mental health services.  A licensed professional counselor and, later, a psychiatrist examined him for severe anxiety, depression, lack of sleep, paranoia, psychosis, and audio and visual hallucinations.  The psychiatrist diagnosed him with substance-induced mood disorder with psychosis, prescribing anti-psychotic and anti-anxiety medications.  His medical records reflected these mental health examinations and diagnoses as well as three prior suicide attempts by hanging.

Between December 21 and Coffelt's death on February 6, the corrections officers did not consistently administer his medications.  He missed them at least nine times.  On February 4, at his request, Coffelt was ordered to segregated confinement.  His evaluation noted an "immediate security risk," "urgent need to separate the offender from others for his/her own safety or that of others" and "for the security and good order of the institution."  His medical record from that day said he was "suffering from existing medical/mental health conditions, taking dose-

-2-

by-dose psychotropic medications, and quiet." The nurse practitioner evaluating Coffelt determined he did not need to be placed on suicide watch.

While on duty February 6, the corrections officers were responsible for checking on Coffelt per MCC policy. This policy mandated that he be visually checked three times per hour, or every 20 minutes. Shortly after midnight, Coffelt was found hanging in his administrative segregation cell with a bedsheet around his neck. MCC medical providers pronounced him dead. The corrections officers reported that the last time they saw him alive and talking was an hour before his death.

## I.

Count II of the complaint alleges "Wrongful Death – Negligence" under Missouri law. In their complaint, Coffelt's parents claim that the corrections officers were aware of his serious mental health needs yet failed to provide adequate and timely medical treatment, failed to properly monitor him while in administrative segregation, and failed to ensure his safety, which ultimately led to his death. They claim that MCC's policies and procedures require its employees to act in a "prescribed and mandatory fashion and without discretion." The corrections officers asserted official immunity in their motion to dismiss. The district court disagreed, stating the complaint plausibly alleges that the MCC policy mandating cell checks met the ministerial duty exception to official immunity. The corrections officers appeal.

This court reviews de novo the denial of a motion to dismiss based on immunity. *Hager v. Arkansas Dept. of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). "Under Federal Rule of Civil Procedure 12(b)(6), the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff." *Id.*

The Supreme Court of Missouri has cautioned courts "not to construe [official immunity] too narrowly lest they frustrate the need for relieving public servants of

-3-

the threat of burdensome litigation." *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 495 (Mo. banc 2024).  Missouri officers are immune from suit when they are acting "within the scope of [their] authority and without malice." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 191 (Mo. banc 2019).  "A plaintiff must plead facts establishing an exception to official immunity." *State ex rel. Morales v. Alessi*, 679 S.W.3d 467, 471 (Mo. banc 2023), *quoting Stephens v. Dunn*, 453 S.W.3d 241, 251 (Mo. App. 2014).  "Absent these allegations, the pleadings are insufficient to state a claim which is not barred by the doctrine of official immunity as a matter of law." *Id.*, *quoting State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 445 (Mo. banc 1986).

Coffelt's parents do not dispute that the corrections officers are public officers, or that they acted without malice.  Thus, unless the complaint establishes an exception through factual allegations, official immunity applies.  *See Forester v. May*, 671 S.W.3d 383, 387 (Mo. banc 2023).  Coffelt's parents argue that the MCC policy mandating that the corrections officers visually check on Coffelt three times per hour, or every 20 minutes, is a ministerial duty that the corrections officers failed to do.  "Official immunity does not apply 'when a public officer fails to perform a *ministerial* duty required of him by law.'"  *Morales*, 679 S.W.3d at 471, *quoting Alsup*, 588 S.W.3d at 191.

A ministerial act is one that is merely "clerical." *Alsup*, 588 S.W.3d at 191. A "ministerial duty compels a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials . . . . [It] is one in which a certain act is to be performed 'upon a given state of facts in a prescribed manner…without regard to the public official's judgment or opinion'. . . . Thus, the central question is whether there is any room whatsoever for variation in *when and how* a particular task can be done.  If so, that task – by definition – is not ministerial." *Id*., *quoting State ex rel. Forgrave v. Hill*, 198 S.W. 844, 846 (Mo. banc 1917) (emphasis added).

In the complaint, Coffelt's parents assert that the corrections officers "were negligent and derelict in the performance of their ministerial duties" because they failed to check on Coffelt "3 times per hour, or every 20 minutes."  The parents must

-4-

affirmatively establish – through pleaded factual allegations – that an exception applies.  It is not sufficient simply to allege that the corrections officers, by not following a department policy, violated a ministerial duty.  *See **Love***, 689 S.W.3d at 496 ("whether a rule, policy, procedure, statute, or regulation may create a mandatory duty to act is *not* the relevant inquiry for deciding whether a duty is ministerial.  Instead, the pertinent inquiry is whether the nature of the act itself is ministerial or clerical.").

Coffelt's parents do argue that the MCC cell check policy at issue is a rote, time-based obligation.  They stress that it prescribes when the check must occur (three times per hour, or every 20 minutes), and how it must be done (a visual check). They conclude that the policy mandates when and how this duty is to be performed, and that the duty is clerical in nature and therefore ministerial.  However, a ministerial act is a "rubber stamp" duty, leaving no room for "even slight" discretion. ***Morales***, 679 S.W.3d at 472-73[1].  If an act "could have been completed in various ways by various people," it is not ministerial.  ***Love***, 689 S.W.3d at 496.  The policy here gives the officer discretion in conducting the checks.  While the policy has a general "when" of "three times per hour, or every 20 minutes," it does not dictate one manner "how" the officer must conduct the check, allowing discretion and variation.  *See **Cady v. City of Malden***, 694 S.W.3d 616, 620 (Mo. App. 2024) (holding that the required video monitoring of inmates reflects "discretionary decision making, such as capable of being performed in different manners by different individuals").  "Tasks that can be completed partially or through different

---

[1] *Morales* illustrates the narrow scope of the ministerial exception and largely governs our disposition of this case.  In that case, the Missouri Supreme Court concluded that a mandatory treatment plan requiring that hospital staff check every 30 minutes on a patient in a state medical facility did not impose a ministerial duty. 679 S.W.3d at 473 (concluding that "all of the tasks" in the treatment plan, including the checking requirement, "required staff to use discretion" and thus "the ministerial exception does not apply.").  Accordingly, the Court affirmed that hospital staff members who had allegedly failed to check on a patient for over two hours prior to his death nonetheless remained entitled to official immunity against a wrongful death claim.

-5-

methods are not ministerial." *Morales*, 679 S.W.3d at 473 (holding that the (violated) requirements to check on a patient every 30 minutes (and take specific acts every two hours) were not ministerial because employees had to use discretion about the need for, and type of, additional care). In fact, Coffelt's parents allege in their complaint that officers are required to "properly assess, evaluate, and manage inmates with physical and mental health conditions," and report "inmates who are acting suspiciously, erratically, or suicidal." These requirements highlight the discretionary nature of the checks. Since officers are required to use judgment in doing checks, the act is discretionary. *See Hall v. Woodruff*, 121 F.4th 1155, 1158 (8th Cir. 2024); *A.H. v. St. Louis Cnty.*, 891 F.3d 721, 729 (8th Cir. 2018) (holding that any action after a glance during a cell-check by a corrections officer was "an exercise of her discretion that is shielded by official immunity"). Official immunity bars Count II against the corrections officers.

## II.

Count V of the complaint alleges deliberate indifference to the risk of suicide under § 1983. Coffelt's parents allege that the corrections officers were responsible for Coffelt's custody and safety. They state there was a substantial and known risk that he would harm himself, that the corrections officers were aware of this risk, and with "deliberate indifference to the substantial risk of harm to Decedent," the corrections officers failed to properly assess and protect Coffelt. The complaint concludes that as a direct and proximate result, he died. The corrections officers asserted qualified immunity in their motion to dismiss. The district court disagreed. "This court reviews de novo the denial of a motion to dismiss based on qualified immunity." *Hager*, 735 F.3d at 1013. "Under Federal Rule of Civil Procedure 12(b)(6), the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff." *Id.*

"Prisoners have a clearly established constitutional right to be protected from the known risks of suicide and to have their serious medical needs attended to . . . . The Eighth Amendment prohibits jail officials from acting with deliberate

-6-

indifference towards risks of suicide." *Whitney v. City of St. Louis*, 887 F.3d 857, 860 (8th Cir. 2018).  However, "qualified immunity shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). "In the jail suicide context, qualified immunity is appropriate when a plaintiff has failed to show that his jailers have acted in deliberate indifference to the risk of his suicide." *Id*.  "Whether an official was deliberately indifferent requires both an objective and a subjective analysis." *Whitney*, 887 F.3d at 860.  To prevail on their deliberate indifference claim, Coffelt's parents must show that the corrections officers (1) "had actual knowledge that [Coffelt] had a substantial risk of suicide and (2) [they] failed to take reasonable measures to abate that risk." *Id*.

Coffelt's parents first argue that the corrections officers had actual knowledge of a substantial risk of suicide.  The complaint asserts generally that the corrections officers were aware of his mental health, his medication regime, his segregation order, and his medical care leading up to his administrative segregation and his eventual suicide.  The complaint attributes this actual knowledge to "Decedent's prior records" documenting three suicide attempts by hanging.  However, the complaint also states that the corrections officers failed to review Coffelt's prior records.  These contradictory factual allegations do not plausibly allege that the medical records gave actual knowledge of a substantial risk of suicide. *See Clark v. Solem*, 628 F.2d 1120, 1121 (8th Cir. 1980) (upholding dismissal of conclusory, contradictory allegations in a § 1983 action); *Whitney*, 887 F.3d at 860 (upholding dismissal of a complaint against a correctional officer that does not allege that the officer had been relayed information about an inmate's suicidal thoughts).

Even if it can be inferred that the corrections officers had some knowledge of an obvious risk of suicide, Coffelt's parents must further allege that their behavior was objectively "so inadequate as to be deliberately indifferent to the risk." *Luckert*, 684 F.3d at 818.  The parents argue that the complaint alleges sufficient facts about Coffelt's suicide risk that were known and obvious to the corrections officers, but

-7-

they nonetheless failed to protect him. They emphasize that Coffelt was placed in administrative segregation in part "for his own safety." However, the complaint also states that the segregation order was issued not merely for his own safety, but for any of three reasons: because of "an immediate security risk," an "urgent need to separate the offender from others for his/her own safety or that of others," or "for the security and good order of the institution." The complaint further alleges that before being placed in administrative segregation, an LPN evaluated Coffelt and indicated his existing medical/mental health conditions were being treated by dose-by-dose psychotropic medications, that his demeanor was quiet, and that he should *not* be placed on suicide watch. The corrections officers were not deliberately indifferent to the risk of suicide even if they acted negligently while he was in administrative segregation. *See Luckert*, 684 F.3d at 818-19 (finding no deliberate indifference to inmate on suicide watch, due to the actual practice of a 30-minute watch, rather than the 20-minute watch in the jail's policy); *Gregoire v. Class*, 236 F.3d 413, 416-19 (8th Cir. 2000) (finding no deliberate indifference where prison employee did not check on inmate until 40 minutes after receiving affirmative notice of intent to commit suicide); *Hott v. Hennepin Cnty.*, 260 F.3d 901, 904-08 (8th Cir. 2001) (finding no deliberate indifference where jail official did not discover inmate's body for hours, despite policy of half-hour checks, because plaintiff did not make a showing of actual knowledge that inmate posed a serious risk of harm to himself.) Because the complaint did not properly plead both the subjective and objective elements of a deliberate indifference claim, the district court erred in denying the motion to dismiss on the grounds of qualified immunity.

\* \* \* \* \* \* \*

The denial of the corrections officers' motion to dismiss Counts II and V of the complaint is reversed, and the case remanded for proceedings consistent with this opinion.

_____

-8-